IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 3:08CR186 |
| | ) |
| TERRENCE PETERS, | ) |
| aka "Dred" or "The Dred," | ) |
| | ) |
| *Defendant*. | ) |
| _____ | ) |

# UNITED STATES' POSITION WITH RESPECT TO SENTENCING FACTORS

Comes now the United States of America, by counsel, and files this position with respect to sentencing factors. The United States has no objections or corrections to the Presentence Report ("PSR"), and concurs with the Probation Officer's determination that defendant Terrence Peter's Offense Level Total is 43, and that his Criminal History Category is IV. (*See* PSR, ¶¶ 81, 82.) The defendant's applicable guideline range is mandatory life imprisonment on count one, and 240 months on count two of the superseding indictment. Pursuant to the factors contained in 18 U.S.C. § 3553(a) and for the reasons set forth below, the position of the United States is that the defendant should be sentenced to a term of life imprisonment.

## I. POSITION ON SENTENCING AND ARGUMENT

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth

in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006)(quoting 18 U.S.C. § 3553(a)).

### A. Nature and Circumstances of the Offense

1. Attributable Drug Weight

Defendant pled not guilty and was found guilty by a jury of one count of conspiracy to distribute fifty grams or more of cocaine base over an eight year period, and of conspiracy to possess firearms in furtherance of a drug trafficking crime over the same time period. The attributable drug weight was determined by the probation officer to be in excess of 4.5 kilograms. In fact, the evidence presented at trial showed the drug weight to be in excess of 150 kilograms of cocaine base. In support of this position, the government states the following:

Robert Jones testified at trial to arriving in the Richmond area sometime in 2000 to sell cocaine with Spencer Peters. (TT 270). Jones only stayed in Richmond for one month before returning to New York to live for about three years, but during that one month he made short trips "a couple of times" to New York with Spencer Peters for the purpose of buying cocaine to bring back to Richmond. (TT 270). After the one month, Jones returned to New York until 2003, when he came back to Richmond to sell drugs for Spencer and Terrence Peters at a house

on 5th Avenue. (TT 273). Jones sold from that house along with other co-conspirators, including Spencer Peters and Clifford Noel, and usually purchased from one-half to one ounce of "crack" cocaine daily to re-sell.

Once Jones moved up in the hierarchy sometime in 2004, he began traveling to New York with the Peters brothers. It was during this time that the operation moved to another drug house located on Detroit Avenue in Richmond. He estimated that he personally accompanied Terrence Peters "numerous times" to New York, and each trip involved the purchase of one to two kilograms of cocaine. (TT 281-81). Jones described the use of a green Thunderbird automobile, owned by Spencer Peters, that had hidden compartments to store drugs and guns, and also described the techniques used by Terrence Peters to avoid detection by law enforcement. (TT 283-85).

These descriptions were corroborated by several witnesses, including Michael Matthews. Matthews purchased between one quarter to one half ounce of crack for re-sale, and did this two to three times per week during the period beginning in 2000, until the end of 2001. (TT 36-37). Matthews was incarcerated for a period of time, was released in 2003, and began to deal crack from the house at 3108 5th Avenue. Matthews described doing "shift" work at that house, where he and Clifford Noel would work for nine hours, and other members of the conspiracy would take other times. (TT 49). He personally sold an ounce of crack per shift, sometimes more, and all of the crack was provided by Terrence Peters. (TT 51-52).

Matthews corroborated New York as the source city for this drug conspiracy. He personally traveled to New York with Terrence and Spencer Peters to purchase kilograms of cocaine, and described the techniques used to avoid detection. (TT 39). Matthews stated that the

3

trips always involved at least one kilogram, and sometimes two or three kilograms of cocaine. (TT 42). Terrence Peters cooked all of the cocaine into crack. (TT 44).

Matthews also corroborated the move to the Detroit Avenue house and that it involved larger amounts of crack distribution. He described he and others purchasing ounce quantities at a time at the house, setting up his drug deals by telephone, then going out to conduct the drug deals. Matthews witnessed other drug dealers coming to the house to purchase directly from Terrence Peters as well. (TT 64-65).

Foluke Dove also provided significant corroboration of the drug quantity. Dove described the trips to New York with Terrence Peters and others occurring numerous times, "more times that I can count." (TT 173). He corroborated that the New York trips involved between one and three kilograms of cocaine per visit, and witnessed Terrence Peters cooking cocaine powder into crack ten to fifteen times in 2000 to 2001. (TT 148). Dove corroborated the use of both the 5th Avenue and Detroit Avenue houses for drug distribution points, noting that before he was arrested in May of 2007, the average amount of cocaine being distributed was seven to eight ounces of crack per day, maybe more. (TT 148).

Numerous witnesses corroborated the extent of this drug conspiracy. For example, Torry Cross met Spencer Peters in jail in 2005. Spencer Peters attempted to recruit Cross into the conspiracy, and detailed New York as their source city, and the use of automobiles with "stash boxes" in them to secrete the drugs. (TT 377). Spencer Peters confirmed to Cross that the trips to New York involved kilogram amounts of cocaine, that it was then cooked into crack, and passed on to his "soldiers" for re-distribution from a house. (TT 377).

Everette Bolling confirmed the use of the Detroit Avenue house as a drug distribution center, that Terrence Peters, Spencer Peters, and Robert Jones all worked together. He then estimated he purchased between one to one and one-half kilograms of crack from that location. (TT 399-401).

Anthony Johnson confirmed that he purchased crack cocaine from the 5th Avenue house from very early in the drug conspiracy, as well as later in the conspiracy at the Detroit Avenue house, usually two to three times a week over many years. (TT 425-33). He identified all three defendants as part of the conspiracy, and corroborated that Terrence Peters offered to take him to New York to purchase large amounts of cocaine. (TT 430).

The conspiracy was corroborated in other ways as well. For example, Sterling Wood testified that Terrence Peters paid him to rent the house on 5th Avenue back in 2002 (TT 236), and provided him with crack cocaine between 25 and 50 times. (TT 242). He also corroborated Peters' ties to the Detroit Avenue house, in that he was paid by Terrence Peters to paint the house. (TT 244). Belinda Archer also confirmed that Terrence Peters controlled the Detroit Avenue residence, and paid her to put the utilities in her name. (TT 255).

Testimony regarding the trips to New York was further corroborated by Officer Lucord of the Henrico Police Department, who arrested Spencer Peters in the green Thunderbird in 2005. He noticed, in addition to crack cocaine and firearms, an "after-market" switch in the car consistent with the use of hidden compartments in the vehicle. (TT 331).

In sum, the conspiracy began in 2000, expanded operations in 2002 with the rental of the 5th Avenue house. During the time period of 2003 and 3004, Terrence Peters controlled the "shifts" operating from the house in which two members of the conspiracy would be on duty to

answer the door, and conducted a twenty-four hour operation. That level of distribution expanded sometime in 2004 with the Detroit Avenue house, which was described by numerous witnesses as a "weight" house. This house operated for several more years up until the time of many of the defendant's arrest in 2007.

The United States submits that a highly conservative estimate of the attributable drug weight in this case exceeds 150 kilograms. If the Court simply reviews the evidence regarding the "shift" work from the 5th Avenue house, Matthews testified that he and Clifford Noel would work one shift, and Jones and another conspirator would work the other shift, with one other conspirator "floating." Matthews indicated that he would usually sell one ounce of crack per shift, often more than that. Based on the sale of four ounces of crack per day, times seven days per week, times fifty-two weeks per year, equals in excess of forty kilograms of crack per year. This excludes the additional sales that were taking place between the conspirators and lower level drug dealers (i.e. Anthony Johnson, Nathan Bayliss, Everette Bolling, and Stanley Turner).

The drug weight substantially increased with the sales from the Detroit Avenue house. Foluke Dove estimated that they were selling seven to eight ounces of crack per day (7 x 28 = 196). Seven ounces of crack per day amounts to over 1.3 kilograms of crack per week (196gms x 7 = 1372 grams). Over the course of one year, the drug weight amounts to over 71 kilograms (1372gms x 52 weeks = 71,344 grams). The Detroit Avenue house operated from sometime in 2004, until the conspiracy ended in 2008, approximately four years. If the Court only considers half of the time in which the evidence shows the conspiracy was flourishing, the drug weight is in excess of 140 kilograms (2 years x 71,344 grams). Add to that only one year from the 5th Avenue house (40 kilograms), and the attributable drug weight exceeds 180 kilograms.

    2.  <u>Firearms</u>

Virtually every witness in this trial testified that firearms were kept nearby throughout the course of this conspiracy. That testimony was corroborated by the 2002 search of the 5th Avenue house where Terrence Peters was apprehended in the kitchen of that house where several firearms were located. (TT 201). Moreover, later investigation revealed that "traps" were constructed in both drug houses to store drugs and firearms. (TT 285). Moreover, as part of Spencer Peters' arrest by Henrico police, several firearms were recovered from his person, as well as photographs of numerous firearms which were identified by other witnesses as possessed by the group for protection. (TT 317-23).

Perhaps more importantly, the jury found the defendants guilty beyond a reasonable doubt that they conspired to possess firearms in furtherance of the drug crime charged in count one of the superseding indictment. Any argument that the firearm enhancement is somehow improper is wholly without merit.

    **B.**    **History and Characteristics of the Defendant**

The defendant has two prior convictions for felony drug offenses. Accordingly, the United States filed notice, pursuant to 18 U.S.C. § 851, of the enhancement of his mandatory minimum from ten years, to mandatory life. The PSR confirms that the defendant was convicted in 1992 of felony possession of marijuana, and again in 2002 of possession of marijuana with intent to distribute, and possession of cocaine, both felonies. As such, the defendant faces a mandatory minimum sentence of life on Count one. (PSR ¶¶ 28-31).

**C. A Guideline Sentence is Consistent With the Goals of 18 U.S.C. Section 3553.**

1. <u>Seriousness of the Offense; Provide Adequate Punishment</u>

The evidence in this case established an ongoing conspiracy over the course of eight years in which the defendants traveled to New York at regular intervals and transported kilogram amounts of cocaine. A conservative estimate of the drug weight in this matter exceeds 150 kilograms. The defendant's conduct throughout the course of the conspiracy establishes that the defendant has a total disregard for the safety of the Richmond community. A sentence at the top of the guideline range is necessary to ensure adequate punishment.

2. <u>Need to Deter Future Criminal Conduct</u>

Drug distribution and related violence are significant problems in the Richmond area and the Eastern District of Virginia. Furthermore, it is evident, by his continued violations of law after being repeatedly convicted and placed on probation, that Peters has little or no respect for the law. His current charges for drug and firearms offenses mirror his past convictions for drug charges. A sentence at the top of the guideline range is necessary to ensure deterrence to criminal conduct.

3. <u>Need to Protect Public from Defendant's Future Criminal Conduct</u>

Defendant is a criminal history category IV. His behavior in the instant case and prior record indicate that he will continue criminal behavior in the future, and supports a sentence at the top of the guidelines.

4. <u>Need to Provide Treatment to Defendant</u>

A sentence within the guideline range will allow defendant the opportunity to take advantage of education and vocational opportunities, which would be beneficial to him.

5. Need to Avoid Unwarranted Disparities

Defendant's present activities do not fall outside the heartland of criminal offenses. The guidelines take into account the range of conduct and defendant's criminal history. Sentencing the defendant within the advisory guideline range will ensure that there is no unwarranted disparity between his sentence and the sentence of a like-positioned defendant.

## II. CONCLUSION

For the foregoing reasons, the United States respectfully asks this Court, after considering the appropriate guideline range and the other sentencing factors set forth in 18 U.S.C. Section 3553 (a), to sentence Terrence Peters to life imprisonment.

                                Respectfully Submitted,

                                DANA J. BOENTE
                                ACTING UNITED STATES ATTORNEY

                                _____/s/_____
                                Peter S. Duffey
                                Assistant United States Attorney
                                VSB No. 39477
                                Office of the United States Attorney
                                600 E. Main Street, Suite 1800
                                Richmond, VA 23219
                                (804) 819-5473 Fax: (804) 771-2316
                                peter.duffey@usdoj.gov

CERTIFICATE OF SERVICE

       I hereby certify that on the 14TH day of May, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David R. Lett, Esq.
7 E. Franklin Street
Richmond, VA 23218
tel: 788-0550
fax: 643-1551
e-mail: davidrlett@verizon.net

Daniel P. Arnold
U.S. Probation Officer
Suite 1150
701 E. Broad Street
Richmond, Virginia 23219

                                                  _____/s/_____
                                                  Peter S. Duffey
                                                  Assistant United States Attorney
                                                  VSB No. 39477
                                                  Office of the United States Attorney
                                                  600 E. Main Street, Suite 1800
                                                  Richmond, VA 23219
                                                  (804) 819-5473 Fax: (804) 771-2316
                                                  peter.duffey@usdoj.gov