

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA

v.                                        Criminal No. 3:08CR186

TERRENCE PETERS


### MEMORANDUM OPINION

Terrence Peters, a federal inmate proceeding <u>pro se</u>, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 168). The Government has responded. Peters filed an unsworn Reply. The matter is ripe for disposition. For the reasons stated below, the Court will deny the § 2255 Motion.


### I.   FACTUAL AND PROCEDURAL HISTORY

On November 6, 2008, the grand jury charged Peters (a.k.a. "Dred"), and his co-defendants Spencer Peters (a.k.a. "Smoke") and Clifford Noel (a.k.a. "Spliff"), with conspiracy to possess with intent to distribute and distribute fifty grams or more of cocaine base (Count One), and conspiracy to possess firearms in furtherance of a drug trafficking offense (Count Two). (Superseding Indictment 1-2, ECF No. 26.) On January 16, 2009, the Government filed notice pursuant to 21 U.S.C. § 851 of its intent to seek an enhanced sentence for Peters based on two prior felony drug offenses. (ECF No. 47, at 2.) On January 23,

2009, a jury found Peters, Spencer Peters, and Noel guilty of both counts. The Court sentenced Peters to life imprisonment on Count One and a concurrent 240-month sentence on Count Two. (J. 2, ECF No. 106.)

On appeal, Peters argued that: (1) he was "denied due process when a potential juror made a statement regarding murder in response to whether she had read anything about any of the Appellants"; (2) the "prosecutor's use of the phrase 'autopsy of a drug conspiracy' in opening statements" prejudiced him; and, (3) "a Government witness's statement on cross-examination that he had previously testified against Noel" caused further prejudice. See United States v. Peters, 392 F. App'x 161, 162 (4th Cir. 2010). The United States Court of Appeals for the Fourth Circuit affirmed his convictions. Id. at 164. The United States Supreme Court denied Peters's petition for a writ of certiorari. Peters v. United States, 131 S. Ct. 1522 (2011).

## II. GROUNDS FOR RELIEF

Peters brings twenty-nine claims that are repetitive, vague, conclusory, belied by the record, and wholly meritless. As a preliminary matter, the Court observes that Peters and his co-defendants, Spencer Peters and Clifford Noel, raised the same claims as Peters in what appear to be identical submissions save the sporadic and inconsistent changing of defendants' and their

2

attorneys' names.  Because the § 2255 Motion and the Reply are nearly carbon copies of Noel's and Spencer Peters's submissions, both contain numerous joint arguments and supporting facts that make little sense, or are inapplicable to Peters, and thus, will be summarily dismissed.[1]

In his § 2255 Motion, Peters raises the following claims for relief:[2]

Claim I:    Trial counsel provided ineffective assistance[3] by:

(1)    failing to move to dismiss based on a violation of Peters's speedy trial rights;

(2)    failing to seek a Bill of Particulars;

(3)    failing to have a "suppression hearing" (§ 2255 Mot. Ex. A, at 1, ECF No. 168-1);

(4)    failing to object to photographs of "some of the defendants apparently brandishing assault weapons during the course of the trial" (id.);

(5)    "fail[ing] to use the various debriefings of the Government's witnesses to impeach them" (id.);

(6)    "allow[ing] their client(s) to stipulate to drug weights, quantities and purities which they knew . . . were inconsistent with

---

[1] The Court has previously dismissed nearly identical claims filed by Noel.  United States v. Noel, No. 3:08CR186, 2014 WL 7239200, at *11 (E.D. Va. Dec. 17, 2014).

[2] The Court corrects the capitalization in the quotations from Peters's submissions.

[3] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

documented evidence in the record" (id.);

(7) "fail[ing] to properly object . . . regarding the missing search warrant" (id.);

(8) failing to adequately prepare for the jury trial;

(9) "fail[ing] to formerly object to the withholding of witness names and/or relevant information" (id. at 2);

(10) "failing to challenge the Government's misconduct on the record, whereby jeopardizing appellate review" (id.);

(11) "failing to challenge the insufficiency of the evidence" (id.);

(12) failing to "move for a new jury pool" (id.);

(13) "failing to effectively cross-examine the Government's witnesses" (id.);

(14) "improperly influencing the defendant on the subject of whether or not to testify" (id.);

(15) "failing to even request an 'informant jury instruction'" (id.);

(16) "failing to raise [the] lack of or missing discovery in pre-trial motions" (id.);

(17) "failing to properly raise certain double jeopardy violations concerning prior acquitted conduct" (id.);

(18) "failing to "move[ ] to exclude evidence of Spencer Peters' 2005 arrest" (id.); and,

(19) "failing to object pre-trial that discovery was missing regarding the allegation of the superseding indictment" (id.).

Claim II:      Appellate counsel provided ineffective assistance by:
- (1) failing to challenge the sufficiency of the evidence; and,
- (2) failing to appeal the "issues surrounding the search warrant(s)" (§ 2255 Mot. 5).

Claim III:     "Multiple violations of the Defendant(s) due process rights" (id.):
- (1) "the prosecution failed to secure relevant state court trial documents and were admonished in court regarding this action" (id.);
- (2) the Court failed to properly instruct the jury on conspiracy;
- (3) "the jury form was devoid of relevant information" (id.);
- (4) "the Defendants['] speedy trial rights were effectively violated" (id.);
- (5) "the Government failed to provide relevant and required exculpatory evidence and failed to produce any search warrant (instead relying on the 'application' for a warrant") (id.); and,
- (6) United States v. Simmons, 649 F.3d. 237 (4th Cir. 2011) requires vacation of his sentence.

Claim IV:     Prosecutorial misconduct:
- (1) "The Government failed to provide relevant discovery materials. The presiding judge noted these significant deficiencies at trial" (§ 2255 Mot. 6 (citation omitted).)
- (2) "The Government sought stipulations from counsel regarding evidentiary matters it fully knew to be either inconsistent or incorrect . . . ." (Id.)

### III.   ALLEGED INEFFECTIVE ASSISTANCE

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

### A.   Pretrial Proceedings

In Claim I(1), Peters states, in sum, that counsel rendered ineffective assistance by "failing to move for a violation of the Defendant's Speedy Trial Rights, the delays associated with

6

the filing of the Superseding Indictment were on the part of the Government.  There was no justifiable reason for any delay articulated on the record . . . ."  (§ 2255 Mot. Ex. A, at 1.) In his Reply, he expounds:  "Peters requested that his attorney . . . proceed to trial on the original Indictment . . . ."  (Reply 3, ECF No. 195.)  To the extent that Peters faults counsel for not following Peters's instruction to proceed to trial on the original Indictment, he states no claim for relief.  The Superseding Indictment supplanted the original Indictment.

For the first time in his Reply, Peters alleges that he requested his attorney to "oppose the motion [for a continuance] and file a motion to dismiss based on a Speedy Trial Act[4] violation."  (Id. at 4.)  Counsel reasonably eschewed opposing the motion for a continuance and filing a motion to dismiss the Superseding Indictment because no Speedy Trial Act violation occurred.

---

[4] The Speedy Trial Act ("the Act") requires that "[a]ny information or indictment charging an individual with . . . an offense shall be filed within thirty days from the date [of] arrest[ ] . . . ." 18 U.S.C. § 3161(b).  The Act also requires that the trial for a defendant who pleads not guilty take place within seventy days of the filing and making public of the information or indictment, or the date on which the defendant appeared before a judicial officer in that court on the pending charge, whichever is later.  18 U.S.C. § 3161(c)(1).  If there is a violation of the Act, upon counsel's motion, the Court must dismiss the indictment.  18 U.S.C. § 3162(a)(2).

A grand jury indicted Peters on April 21, 2008; however, Peters was not arrested until September 26, 2008. The Court arraigned Peters on October 1, 2008. The Court set the trial date for December 3, 2008, within seventy days of the arraignment. See 18 U.S.C. § 3161(c)(1). On November 6, 2008, the grand jury returned a Superseding Indictment against Peters. On November 17, 2008, the Government moved for an unopposed continuance of Peters's trial, and the Court found the interests of justice warranted continuing the trial date until January 20, 2009, and that the interest of justice in so doing outweighed the interest of the defendants and the public in a trial within the Speedy Trial Act period. As of that date, no speedy trial violation had occurred; thus, counsel reasonably declined to pursue Peters's speedy trial claim because it lacked merit. To the extent that Peters argues that counsel's failure to object to continuing the trial to January 20, 2009 was somehow deficient, he fails to demonstrate any prejudice. Claim I(1) will be dismissed.

In Claim I(2), Peters faults counsel for failing to move for a Bill of Particulars. In his Reply, Peters alleges that "the original indictment was vague and indefinite." (Reply 4.) Peters's vague and conclusory allegations fail to state a claim for habeas relief. Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it

"stated only bald legal conclusions with no supporting factual allegations"). For that reason alone, Claim I(2) will be dismissed. Furthermore, Peters fails to demonstrate any resulting prejudice. Counsel for Peters's co-defendant, Noel, filed a motion for a Bill of Particulars (ECF No. 31), which the Court granted (ECF No. 32). Nevertheless, the jury convicted Noel. Peters fails to provide any rationale for why "the result of the proceeding would have been different," Strickland, 466 U.S. at 694, had his counsel filed a similar motion. Because Peters fails to show deficiency or prejudice, Claim I(2) will be dismissed.

In Claims I(3) and I(11), Peters faults counsel for failing to challenge the sufficiency of the evidence prior to trial. In support of these claims, Peters states "there was at issue a defective search warrant and pieces of physical evidence to be challenged." (§ 2255 Mot. Ex. A, at 1.) Peters neither identifies on what grounds counsel could have challenged the sufficiency of the evidence or the purportedly defective search warrant nor identifies what physical evidence should have been suppressed. Peters fails to demonstrate deficiency of counsel or resulting prejudice based on these vague, conclusory allegations. Sanders, 373 U.S. at 19. Accordingly, Claims I(3) and I(11) will be dismissed.

In Claim I(7), Peters faults counsel for "fail[ing] to properly object on the record regarding the missing search warrant. It was a defendant, Terrence Peters[,] who ultimately demanded to bring this to the Judge's attention after an apparent timid counsel refused to raise this issue at trial[.]" (§ 2255 Mot. Ex. A, at 1.) While Peters's claim as articulated makes little sense, the Court pieces together that Peters intends to argue that, because Peters, instead of Peters's counsel, brought to the Court's attention that he purportedly failed to receive signed copies of the 2002 and 2003 search warrants (see Jan. 22, 2009 Tr. 483-88, 492-95), somehow Peters's counsel rendered ineffective assistance.

Peters raised this issue during trial, and, in response to the Court's inquiry, counsel for the Government and all three Defendants examined the inventory to ensure that the Defendants had, in fact, received signed copies of the 2002 and 2003 search warrants during discovery. (Jan. 22, 2009 Tr. 494-95.) Peters's counsel agreed that he had received copies of the search warrants, with the attached affidavits signed by the affiant, the full report related to the execution of the warrant, and the inventory conducted. (Jan 23, 2009 Tr. 1-4, ECF No. 175-1.) Even more, Peters's counsel told the Court that he had previously discussed the warrants with Peters and "gave Mr. Peters copies" of these documents. (Jan 23, 2009 Tr. 12.)

Considering those facts of record, Peters's conclusory allegations fail to demonstrate any deficiency of counsel or resulting prejudice. Accordingly, Claim I(7) will be dismissed.

In Claim I(12), Peters argues that counsel "failed to . . . move for a new jury pool after certain comments were voiced in the presence of the potential jurors. A member of the panel indicated in front of other members of the panel that she was aware, or had read about, the murder conviction of one of the defendants." (§ 2255 Mot. Ex. A, at 2.) Contrary to Peters's assertion, the record demonstrates that counsel moved to dismiss the juror pool on precisely this basis. (See Jan. 20, 2009 Tr. 5-7, ECF No. 86.) The venirepersons assured the Court that they could remain impartial. In response to the motion, the Court decided to ask the jury pool additional questions to determine if each potential juror could render a fair and impartial decision after hearing the words "these people" and "murder." (Jan. 20, 2009 Tr. 7-9.) The jurors confirmed that they could be impartial. (Jan. 20, 2009 Tr. 9.) Thus, Peters fails to demonstrate any deficiency of counsel or resulting prejudice, and Claim I(12) will be dismissed.

In Claims I(16) and I(19), Peters contends that counsel failed "to raise lack of or missing discovery in pre-trial motions" and failed "to object pre-trial that discovery was missing regarding the allegations in the Superseding

Indictment." (§ 2255 Mot. Ex. A, at 2.) In Claim I(9), Peters contends that counsel "failed to formally object to the withholding of witness names and/or relevant information to the Court[.]" (Id.) In Claim I(10), Peters contends that counsel "fail[ed] to challenge the Government's misconduct on the record, whereby jeopardizing appellate review[.]" (Id.) In Peters's Reply, he expounds on these four claims, and alleges that the Government "failed to provide impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972), by comparing what [Michael] Matthews and [Anthony] Johnson said in last-minute discussions with the prosecutor just before trial and their statements in the debriefings. Just before trial, Matthews and Johnson supplied additional information that was not reflected in their earlier interviews." (Reply 11; see id. at 12-13.) Peters's conclusory and terse allegations fail to provide a claim for relief.

Peters fails to identify what, if any, additional information that Matthews and Johnson provided to the prosecutors in their statements or its purported impact upon his trial. Thus, Peters fails to demonstrate any prejudice from counsel's failure to object to the Government's failure to disclose the statements. Moreover, Peters's co-defendant, Noel, litigated this issue in a Motion pursuant to Federal Rule of Criminal Procedure 33. In finding that the Motion lacked merit,

the Court addressed the underlying claim that the Government violated Giglio and progeny, "in not disclosing the statements made by two witnesses, Michael Matthews and Anthony Johnson, in their pre-trial preparation with the prosecutor." United States v. Noel, No. 3:08cr186-03, 2009 WL 2767650, at *1-6 (E.D. Va. Aug. 24, 2009).[5] The Fourth Circuit affirmed. Peters, 392 F. App'x at 163. Peters provides no facts to show how his claims differ from those that Noel pursued. Accordingly, Claims I(9), I(10), I(16) and I(19) will be dismissed for lack of merit.

In Claim I(17) Peters states, in sum, that counsel "fail[ed] to properly raise certain double jeopardy violations concerning prior acquitted conduct." (§ 2255 Mot. Ex. A, at 2.) In Claim I(18), Peters states that "counsel should have moved to exclude evidence of Spencer Peters' 2005 arrest . . . ." (Id.) Peters's conclusory allegations, without any further explanation or supporting argument, fail to demonstrate any deficiency of counsel or resulting prejudice. See Sanders, 373 U.S. at 19. Claims I(17) and I(18) will be dismissed.

---

[5] The Court found that these statements were not material evidence for several reasons. First, the disclosure of the pretrial interviews of Matthews and Johnson "merely would have been cumulative impeachment evidence," Noel, 2009 WL 2767650, at *5, both witnesses "were cross-examined about the consistency of their statements," id., and "the testimony of at least three witnesses both corroborated the details given by Matthews and Johnson and provided independent evidence" of the defendants' guilt. Id.

## B.   Trial Claims

In Claim I(4), Peters faults counsel for failing to object to the introduction of photographs of "some of the defendants apparently brandishing assault weapons during the course of trial." (§ 2255 Mot. Ex. A, at 1.) In his Reply, Peters explains that:

> The subject photographs of weapons did not display any undeniable or irrefutable markings or alterations, visible serial numbers, to support the Government's claim of Peters's acknowledgment or involvement with what appeared to be weapons. The Government did not present any material weapons related to the photographs obtained from Peters' arrest in 2005. Without actual possession of those weapons in the photographs [Gov. Ex. 15 and 17], this evidence has no indicia of reliability . . . and should never been allowed to be admitted as evidence. These photographs planted a picture in the mind of the jury and prejudiced Peters.

(Reply 10 (alteration in original).) Even if Peters had stated a claim (which he has not), he has failed to demonstrate any deficiency of counsel or resulting prejudice.

Counsel reasonably eschewed objecting to the admission of the photographs of the firearms during trial. First, Peters's contention that the photographs only "appeared" to contain weapons, and without "actual possession of those weapons in the photographs" the photographs lacked "indicia of reliability," lacks merit. (Id.) At least four witnesses testified about the conspiracy's possession of firearms and identified the photographs as depicting firearms that had been possessed by

14

members of the conspiracy.   Trial testimony established that firearms were commonly present in the houses where the conspiracy sold drugs.   (Jan. 20, 2009 Tr. 71; Jan. 21, 2009 Tr. 433-34.)   Witness Michael Matthews testified that, when he, along with Peters and his brother Spencer Peters, made trips to New York to purchase kilos of cocaine, they had "stash[es] . . . for firearms in the car."   (Jan. 20, 2009 Tr. 43.)   Matthews explained that the conspirators used firearms for "protection." (Id.)   Matthews also testified that Peters gave him the weapon that served as the basis for his conviction for possession of a firearm in 2001.   (Jan. 20, 2009 Tr. 82.)

William K. Lucord, a patrol officer with the Henrico County Police, arrested Spencer Peters on May 16, 2005 after finding bullets, two firearms, and drugs in the car and on his person. (Jan. 21, 2009 Tr. 315-21.)   Officer Lucord found two camera memory cards in the trunk of the car searched after Spencer Peters's arrest.   (Jan. 21, 2009 Tr. 322.)   Officer Lucord testified that Government Exhibits 15 through 17 were photographs recovered from the memory card.   (Jan. 21, 2009 Tr. 322-23.)   Several witness identified Government Exhibits 15 and 17 as photographs of firearms that the conspiracy members used as protection.   (See, e.g., Jan 20, 2009 Tr. 70-71.)

Exhibit 15 depicted a number of assault rifles or "long guns" stored in the garage at Peters's child's mother's home.

15

(Jan. 20, 2009 Tr. 69-71; Jan. 21, 2009 Tr. 292-93, 300-01.) His brother, Spencer Peters, placed the firearms in the garage. (Jan. 21, 2009 Tr. 293.)   Spencer Peters would buy the firearms in the crack house or "off the street."   (Jan. 21, 2009 Tr. 293.)   Stanley Turner testified that he sold Spencer Peters the AR-15 firearm depicted in Exhibit 15 in exchange for approximately an ounce of crack cocaine. (Jan 21, 2009 Tr. 344-46.)   Turner identified photographs of several other firearms that he sold to Spencer Peters in exchange for crack cocaine. (Jan. 21, 2009 Tr. 346-48.)   Anthony Johnson testified that he sold an AK-47 to Spencer Peters in 2002.   (Jan. 21, 2009 Tr. 434.)   The firearm pictured in Exhibit 17 was identified as purchased "off the street" by Spencer Peters.   (Jan 20, 2009 Tr. 149-51; see Jan 20, 2009 Tr. 71; Jan 21, 2009 Tr. 293.)   When Spencer Peters purchased the firearm, he called co-conspirator Robert Jones, to come to the house he shared with Clifford Noel, to show him the firearm.   (Jan 21, 2009 Tr. 292-94.)   Robert Jones testified that Spencer Peters took the photographs of the firearms labeled as Government Exhibits 15-17 a few days before Spencer Peters's arrest in 2005 and had shown the photographs to Jones.   (Jan. 21, 2009 Tr. 294, 302.)

The record clearly establishes that the photographs depicted firearms used by the conspiracy, in which Peters was "the top dog."   (Jan. 20, 2009 Tr. 67.)   Peters fails to

16

demonstrate any deficiency of counsel or resulting prejudice from counsel's failure to object to the introduction of the photographs of certain firearms as unreliable. Claim I(4) lacks merit and will be dismissed.

In Claim I(5), Peters faults counsel for "fail[ing] to use the various debriefings of the Government's witnesses to impeach them[.]" (§ 2255 Mot. Ex. A, at 1.) Similarly, in Claim I(13), Peters contends that counsel rendered ineffective assistance by "failing to effectively cross-examine the Government's witnesses[.]" (Id. at 2.) In his Reply, Peters claims that counsel should have "impeached the Government witnesses who were mainly crack cocaine addicts" and "could have shown that these witnesses were testifying so they could receive some benefit from the Government such as a shorter sentence or dismissed charges." (Reply 5.) Finally, Peters suggests, in a conclusory manner, that counsel should have cross-examined Michael Matthews, Robert Jones, Everette Bolling, and Stanley Turner with their debriefings in order to demonstrate inconsistencies in their trial testimony. (Id.)

Contrary to Peters's assertion, his counsel cross-examined both Matthews and Bolling and elicited testimony about their participation in the drug conspiracy, their drug use, and the benefit that they were receiving from the Government in exchange for their cooperation and testimony in the trial. (See Jan. 20,

17

2009 Tr. 74-88; Jan 21, 2009 Tr. 402-410.)   Furthermore, both Noel's and Spencer Peters's counsel cross-examined Jones and Turner on the same issues.  (See Jan 21, 2009 Tr. 295-314, 354-57.)[6]   Counsel also used the witnesses' prior statements to impeach their testimony and demonstrate inconsistencies.  (See, e.g., Jan 20, 2009 Tr. 82-86; Jan. 21, 2009 Tr. 403-07.)  Peters fails to identify with specificity what further information counsel could have, or would have, elicited.   Thus, Peters demonstrates no deficiency or prejudice.  See Sanders, 373 U.S. at 19; cf. United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation"); Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1990) (dismissing claims where petitioner failed to make an adequate proffer of testimony of witness).

In his Reply, Peters also faults counsel for "fail[ing] to properly impeach [Michael Matthews] in front of the jury." (Reply 5.)   Peters claims that cooperating witness Matthews "admittedly participated in the Carpenter murder[,] which the Government promised [Matthews that he] would not be charged with

---

[6] When asked by the Court, counsel agreed that the principle line of defense was that "these people will say anything in order to get their sentences reduced."  (Jan. 21, 2009 Tr. 335.)

in exchange for his testimony at trial." (Id.)[7] A review of the record demonstrates that "[no] witness was allowed to testify to the Carpenter murder in the federal case." United States v. Noel, No. 3:08CR186-03, 2009 WL 2496520, at *3 (E.D. Va. Aug. 14, 2009) (ECF No. 133). Counsel clearly served his client's best interests by keeping any reference to his co-defendant's, and alleged co-conspirator's, State murder charges out of the federal proceeding. Thus, Peters demonstrates neither deficiency nor prejudice and Claims I(5) and I(13) will be dismissed.

In Claim I(6), Peters argues that counsel "allowed their client(s) to stipulate to drug weights, quantities and purities which they knew (or alternatively, should have known) were inconsistent with the documented evidence in the record[.]" (§ 2255 Mot. Ex. A, at 1.) In his Reply, Peters clarifies that "none of the defendants . . . ever agree[d] to, requested to, stated anywhere orally or in writing on-the-record that they would stipulate to the drug analysis report." (Reply 5.) Peters claims that he requested that counsel have an independent drug lab analysis performed. (Id.) Peters argues that he "never waived his Sixth Amendment right [under] the

---

[7] The State court tried and convicted Noel of the murder of Ambrose Carpenter in October 2008. United States v. Noel, No. 3:08cr186-03, 2009 WL 2496520, at *2 (E.D. Va. Aug. 14, 2009) (ECF No. 133). Noel's conviction was vacated and the state nolle prossed the Carpenter murder charge. Id.

Confrontation Clause." (Id. at 5-6.)[8] The Court infers that Peters intends to fault counsel for lodging no objection to the Government's introduction of the drug analysis reports and not requiring an expert to testify as to the reports' authenticity.[9] For the following reasons, Peters fails to demonstrate any deficiency of counsel or resulting prejudice from counsel's failure to object to the introduction of the drug analyses.

The three lab analyses (Exhibits 31, 33, 38) of the drugs recovered from a search of 3108 5th Avenue in November 2002 (Jan. 21, 2009 Tr. 196, 205-06), recovered from a search again in November 2003 (Jan. 21, 2009 Tr. 218, 226-27), and recovered from Spencer Peters's person after his arrest in 2005 (Jan. 21, 2009 Tr. 318, 325-26), were admitted into evidence without objection from counsel. In its witness list, the Government indicated that it intended to call three witnesses from the Department of Forensic Science to testify during trial. Peters

---

[8] To the extent that Peters attempts to raise a Confrontation Clause claim for the first time in his § 2255 Motion, such claim would be barred, because he could have raised, but failed to raise, this claim on direct appeal. See Bousley v. United States, 523 U.S. 614, 622-23 (1998); United States v. Frady, 456 U.S. 152, 167-68 (1982).

[9] Both Peters and the Government state that counsel stipulated to the introduction of the lab analyses. However, neither party directs the Court to the portion of the trial transcript where such a stipulation was entered on the record. The record demonstrates that the three analyses were entered into the evidence without objection from counsel. (See Jan. 21, 2009 Tr. 205-06, 226-27, 325-26.)

fails to demonstrate that, but for counsel's failure to object to the lab analyses of the drugs, a reasonable probability existed that the Government would not have been able to produce the relevant witness to testify as to the drug analyses' authenticity.  Cf. United States v. Santiago, No. 3:09CR299, 2014 WL 4230441, at *4 (E.D. Va. Aug. 25, 2014).  Moreover, counsel made a legitimate strategic choice to lodge no objection to the authenticity of the Government's forensic evidence of the crack cocaine, a readily provable fact, and instead focus on discrediting the Government's witnesses against Peters.  See Lemon v. United States, 335 F.3d 1095, 1096 (8th Cir. 2003) (finding decision to stipulate to laboratory reports "part of a reasonable trial strategy" when counsel focused efforts on disproving other elements of a case); cf. United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014) (citations omitted) ("Attorneys exist to exercise professional judgment, which often involves setting priorities" instead of "scattershot[ing] the case by raising every objection at trial.").

Additionally, in light of the extensive evidence about the large quantities of crack cocaine sold during the same time period, Peters fails to demonstrate any prejudice from counsel's failure to object to the introduction of the lab analyses.  The Government introduced the certificate of analyses from two raids of the drug house in 2002 and 2003 and from the drugs recovered

from Spencer Peters after his arrest in 2005. Police recovered only a small amount of crack cocaine compared with the quantities attributable to the conspiracy as a whole. During trial, the evidence demonstrated that the conspiracy distributed kilograms of crack cocaine between 2000 and 2008. The Presentence Report ("PSR") attributed 4.5 kilograms or more of cocaine base to Peters. (PSR Worksheet A, at 1.) Based on the evidence presented at trial, the Court found that "the testimony establishes beyond question weights many times in excess of 4.5 kilograms" (May 28, 2009 Tr. 18) and that Peters "was the leader of the conspiracy in every respect." (May 28, 2009 Tr. 18.) Thus, Peters fails to demonstrate any deficiency of counsel or prejudice based on his failure to object to the introduction of the lab analyses. Claim I(6) will be dismissed.

In Claim I(8), Peters faults counsel for "[a] total lack of preparation for jury trial proceedings. Very limited amount of time spent meeting with client, obtained no testimony of any outside investigators at trial to support their client's respective positions[.]" (§ 2255 Mot. Ex. A, at 1.) Peters's vague, conclusory allegations about counsel's deficiency fail to state a claim for habeas relief. See Sanders, 373 U.S. at 19. Moreover, Peters fails to proffer what concrete, exculpatory evidence "outside investigators" could have provided to bolster

his defense.    Terry, 366 F.3d at 316.    Claim I(8) will be dismissed.

In Claim I(14), Peters contends that counsel "improperly influenc[ed] the defendant on the subject of whether or not to testify on their own behalf at trial." (§ 2255 Mot. Ex. A, at 2.)  Peters argues that had he "testified on his own behalf he could have refuted and rebutted the testimony of the Government's witnesses especially the witnesses who were allegedly Peters' drug customers" and he could have shown "he was in a buyer-seller relationship with these witnesses and not in a conspiracy." (Reply 9.)  The record demonstrates that Peters had ample opportunity to testify, and after numerous vacillations at trial, ultimately chose not to.[10]  In response to the Court's inquiry, Peters stated that counsel had advised him not to testify; however, he understood that he could disregard his counsel's advice.  (Jan. 23, 2009 Tr. 8.)  Peters affirmed that he understood that he had the right to testify, but after "consider[ing] both sides," (Jan. 23, 2009 Tr. 7), it was his

---

[10]    During trial, the Court recessed for approximately 45 minutes so that Peters could once again discuss with counsel whether he wished to testify.  (Jan. 23, 2009 Tr. 5-7, ECF No. 175-1.)   When the Court reconvened, Peters stated that he did not wish to testify.   (Jan. 23, 2009 Tr. 6-8.)   Shortly thereafter, Peters told the Court that he wished to testify after lunch.  (Jan. 23, 2009 Tr. 9.)   As Peters was about to testify after the lunch recess, he once again changed his mind and chose not to testify.  (Jan. 23, 2009 Tr. 13.)

"decision that [he did not] want to testify" (Ja. 23, 2009 Tr. 8).

Despite the Court's extensive questioning of Peters during trial to ensure that it was Peters's decision not to testify, at sentencing, Peters alleged that counsel "threatened [him] not to testify" (May 28, 2009 Tr. 6) by stating that he would "let [Peters] handle the case [him]self" if he chose to testify (May 28, 2009 Tr. 7). The Court found that the record clearly established the mendacity of this accusation. (May 28, 2009 Tr. 20.) Considering that the record evidence shows that Peters faced no improper influence in deciding not to testify, he simply cannot establish that counsel was deficient.

Nor has Peters demonstrated any prejudice because he fails to demonstrate that, but for counsel's purported error regarding Peters's desire to testify, a reasonable probability exists that the jury would have found him not guilty of the conspiracy counts. Peters has failed to provide any explanation about why a jury would have given his testimony any weight in light of the overwhelming evidence of his guilt. See Terry, 366 F.3d at 316. Claim I(14) will be dismissed for lack of merit.

In Claim I(15), Peters contends that counsel "fail[ed] to even request an informant jury instruction[.]" (§ 2255 Mot. Ex. A, at 2.) Contrary to Peters's assertion, counsel filed several proposed jury instructions pertaining to Government

informants and the credibility of their testimony.   (ECF No. 45, at 19-21.)   The Court also ultimately gave an instruction on Government informants and their credibility.   (ECF No. 66, at 20-21.)   Peters fails to demonstrate deficiency of counsel or prejudice, and Claim I(15) will be dismissed.

### C.   Ineffective Assistance of Appellate Counsel

In Claim II(1), Peters states:   "While counsel did challenge the sufficiency of the evidence on appeal as to Clifford Noel, no such similar challenge was raised as to either of the [Peters] brothers."   (§ 2255 Mot. 5.)   In Claim II(2), Peters faults appellate counsel for failing to appeal vaguely described "issues surrounding the search warrant(s)."   (Id.) Peters's conclusory allegations fail to state a claim for habeas relief.   Sanders, 373 U.S. at 19.

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists.   Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (citing Strickland, 466 U.S. at 688, 694).   Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."

Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)). A presumption exists that appellate counsel "'decided which issues were most likely to afford relief on appeal.'" Bell, 236 F.3d at 164 (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)).

Peters fails to demonstrate that his vague challenges to the sufficiency of the evidence or the search warrants were clearly stronger arguments than those issues counsel chose to pursue on appeal. (See supra Part I.) Notably, Noel's appellate challenge to the sufficiency of the evidence failed. United States v. Peters, 392 F. App'x 161, 163 (4th Cir. 2010). Moreover, the evidence at trial established that, unlike Noel, Peters not only participated in, but actually led, the conspiracy, suggesting that a challenge to the sufficiency of the evidence against him was much less likely to prevail on appeal. Peters additionally fails to provide any facts suggesting that his ill-defined challenge to the search warrants was stronger than those arguments raised by counsel. Thus, Peters has demonstrated no deficiency or prejudice, and Claims II(1) and (2) will be dismissed.

## IV. DUE PROCESS CHALLENGES/PROSECUTORIAL MISCONDUCT

In Claims III and IV, Peters again rehashes claims previously raised in Claim I; however, he adds the gloss of due process and prosecutorial misconduct. Peters again provides no supporting facts for his conclusory claims as alleged on the standard habeas form. Instead, Peters directs the Court to "Exhibit B" and "Exhibit C" to support his claim, although both exhibits merely consist of a variety of attached documents and pleadings which make no reference to any of the claims alleged.

The procedural default rule bars Claims III(1)-III(5) and IV(1) and IV(2) from review here, absent a showing of cause and prejudice or actual innocence, because Peters could have raised, but did not raise, these claims on direct appeal. See Bousley v. United States, 523 U.S. 614, 622-23 (1998); United States v. Frady, 456 U.S. 152, 167-68 (1982). Peters fails to show cause and prejudice or actual innocence. Thus, Claims III(1)-III(5) and IV(1) and (2) will be dismissed.[11]

---

[11] While the Government only argued that the procedural default rule barred Claim IV from review here, the Court may sua sponte raise procedural default where it would significantly advance judicial efficiency. Yeatts v. Angelone, 166 F.3d 255, 261 (4th Cir. 1999); Smith v. Virginia, No. 3:11CV06, 2012 WL 618973, at *3 (E.D. Va. Feb. 24, 2012). Because Peters's claims are repetitive, lack merit, and are frivolous, the Court sua sponte invokes procedural default.

In Claim III(6), Peters argues that <u>United States v. Simmons</u>, 649 F.3d 237 (4th Cir. 2011),[12] "directly effects the use of certain prior convictions, and therefore, at a bare minimum the sentence must be vacated and remanded for a re-sentencing hearing." (§ 2255 Mot. 6.) Peters fails to explain, and the Court fails to discern, how <u>Simmons</u> applies to Peters's sentence.[13] Peters's conclusory and terse allegations fail to state a claim for relief. <u>Sanders v. United States</u>, 373 U.S. 1, 19 (1963). Claim III(6) will be dismissed.

---

[12] In <u>Simmons</u>, the United States Court of Appeals for the Fourth Circuit

> overruled prior decisions and held that, in deciding whether to enhance federal sentences based on prior North Carolina convictions, we look not to the maximum sentence that North Carolina courts could have imposed for a <u>hypothetical</u> defendant who was guilty of an aggravated offense or had a prior criminal record, but rather to the maximum sentence that could have been imposed on a person with the defendant's <u>actual</u> level of aggravation and criminal history.

<u>United States v. Powell</u>, 691 F.3d 554, 556 (4th Cir. 2012) (citing <u>Simmons</u>, 649 F.3d at 241). The Fourth Circuit has found that <u>Simmons</u> applies retroactively to cases on collateral review. <u>United States v. Bowman</u>, 561 F. App'x 294, 298 (4th Cir. 2014) (citing <u>Miller v. United States</u>, 735 F.3d 141, 145-47 (4th Cir. 2013)).

[13] Peters fails to identify the prior convictions that he seeks to challenge. Nevertheless, the Court notes that in the § 851 enhancement, the United States identified two prior felony drug convictions for possession of marijuana and possession of marijuana with the intent to distribute. (§ 851 Notice, at 2.) Peters was sentenced to 364 days and five years, respectively. (PSR ¶¶ 28, 31.) Peters wholly fails to provide any argument as to why he believes <u>Simmons</u> invalidates the use of these prior felony drug convictions.

## V.   OUTSTANDING MOTION

On October 11, 2013, Peters filed a "CITATION OF ADDITIONAL AUTHORITY" (ECF No. 200) in which he cites Alleyne v. United States, 133 S. Ct. 2151 (2013).  Peters has not filed a motion to amend to add this claim.  Nevertheless, "[u]nder Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted).  As explained below, Peters's amendment is futile.

In Peters's rambling submission, he appears to argue that Alleyne requires that a § 851 sentencing enhancement must be submitted to the jury, and therefore he should be resentenced. (Citation of Authority 3.)   In Alleyne, the Supreme Court addressed a defendant's mandatory minimum sentence of seven years for brandishing a firearm under 18 U.S.C. § 924(c)(1)(A)(ii).   Alleyne, 133 S. Ct. 2155-56.  The Supreme Court held that, other than prior convictions, "facts that increase [statutory] mandatory minimum sentences must be submitted to the jury."   Id. at 2163.   Peters fails to demonstrate that he can mount a meritorious claim based on the decision in Alleyne.   See United States v. Williams, 554 F. App'x 128, 131 (4th Cir.) (citations omitted) ("Alleyne did not address, much less overrule, the exception for the use of

29

prior convictions to enhance a sentence . . . ."), cert. denied, 134 S. Ct. 2715 (2014) and cert. denied, 134 S. Ct. 2718 (2014). To the extent Peters also suggests that the district court improperly enhanced his sentence under the guidelines, Alleyne provides him no relief. See United States v. Mason, 547 F. App'x 235, 236 (4th Cir. 2013) (citation omitted) (explaining that Alleyne "did not disturb judicial factfinding at sentencing for facts that do not impact the statutory punishment"). Accordingly, Peters's attempt to amend (ECF No. 200) will be denied as futile.

## VI.  CONCLUSION

For the foregoing reasons, Peters's claims will be dismissed. Peters's request to amend (ECF No. 200) will be denied. Peters's § 2255 Motion (ECF No. 168) will be denied and the action will be dismissed.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel,

529 U.S. 473, 484 (2000) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 & n.4 (1983)).   Peters fails to satisfy this requirement.   A certificate of appealability ("COA") will be denied.

The Clerk is directed to send a copy of this Memorandum Opinion to Peters and counsel of record.

It is so ordered.

_____ /s/   _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 19, 2015

31